## BALTIMORE & O. R. CO. v. WALTER S. NEWHALL CO.

(Circuit Court of Appeals, Fourth Circuit.   July 5, 1921.)

### No. 1813.

1. **Patents ☞235—Device not using element of patented device held not to infringe patent.**

   A patent on a plant for thawing frozen contents of cars by inclosed stalls in which hot air is introduced, which may be deflected by means of dampers to other stalls, is not infringed by a plant of the same construction, where the stalls are independent and separate, and no use is made of dampers for deflecting air currents.

2. **Patents ☞238—Change in plan of construction of plant held to avoid infringement of patent.**

   Where a plant for thawing frozen contents of cars was being constructed to use dampers for deflecting air currents in such a way as to infringe a patent covering such a plant, but the plan of construction was changed by securely closing the openings left for the dampers with plates, there is no infringement of the patent, though the plates could be removed and the dampers mounted with little expense.

3. **Patents ☞328—No. 1,044,230, claims 20, 23, for thawing apparatus, held not infringed.**

   Patent No. 1,044,230, claims 20 and 23, for plant for thawing frozen contents of cars, *held* not infringed.

4. **Patents ☞310(10)—Filing of supplemental bill for infringement held unnecessary.**

   Where an interlocutory decree over a year before enjoined infringement of a patent, and the final decree provided that the injunction should continue, except with respect to a released plant, the filing of a supplemental bill for an injunction with respect to another plant was unnecessary.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit by the Walter S. Newhall Company against the Baltimore & Ohio Railroad Company. From a decree for plaintiff (258 Fed. 650), defendant appeals. Reversed.

Arthur C. Fraser, of New York City (Duncan K. Brent, of Baltimore, Md., on the brief), for appellant.

Albert H. Bates, of Cleveland, Ohio, and Maurice B. Saul, of Philadelphia, Pa. (Bates & Macklin, of Cleveland, Ohio, Prichard, Saul, Bayard & Evans, of Philadelphia, Pa., and Haman, Cook, Chesnut & Markell, of Baltimore, Md., on the brief), for appellee.

Before KNAPP, Circuit Judge, and SMITH and WATKINS, District Judges.

☞For other cases see same topic & KEY–NUMBER in all Key-Numbered Digests & Indexes

KNAPP, Circuit Judge. The appellee, Walter S. Newhall Company, plaintiff below, is the owner of letters patent No. 1,044,230, issued November 12, 1912, for an apparatus for thawing the contents of freight cars which have become frozen. This suit involves its use for thawing cars of coal in that condition. Briefly described, the apparatus consists of a train shed long enough to hold a number of cars and provided with doors for closing its ends. On top of the shed, at an intermediate point, is a blower house, in which air is heated and blown through appropriately arranged ducts or conduits, and the openings therein, and thereby directed against the bottoms and sides of the cars. The air is then sucked back into the blower house, to be again heated and driven through the ducts, and thus kept in constant circulation. The shed is made of sufficient width to cover the number of tracks desired to be used in connection with the thawing apparatus, and when built for more than one track is divided by partitions into as many compartments as there are tracks.

After protracted negotiations with plaintiff for the construction of a thawing plant at Curtis Bay, Md., the defendant rejected its proposals and in January, 1916, gave the contract to the Surety Engineering Company, which offered to build it for a smaller sum and to protect defendant from suits for infringement. The work was begun soon afterwards and appears to have been completed some months later. Claiming that the plant as built infringed its patent, plaintiff brought this suit in December, 1916. In the meantime defendant had decided to construct another thawing plant at Arlington, Staten Island, twice the size of the one at Curtis Bay. Plaintiff was a bidder for this work also, but was again underbid by the Surety Engineering Company, to which the contract was awarded in August of that year. The original bill, however, was confined to the Curtis Bay plant, as was the evidence at the first trial in the early part of June, 1917. On the 23d of that month the court below filed an opinion holding that 4 of the 23 claims of the patent were valid, and that two of them, 20 and 23, had been infringed. 243 Fed. 615. An interlocutory decree was entered on the 6th of September, enjoining defendant from further infringement of these claims, and providing for the taking of testimony in open court on the question of damages. The final decree of November 19, 1917, awarded plaintiff $5,500 for actual damages and $4,000 for litigation expenses, or a total of $9,500, which defendant subsequently paid without appeal. It was agreed that the damages then under consideration should be limited to the Curtis Bay plant, and that plaintiff should have the right to proceed thereafter in regard to the Arlington plant.

Accordingly, on February 1, 1919, plaintiff filed a supplemental bill relating to that plant, pleading the prior adjudication and alleging the same infringement as in the original bill, especially of claims 20 and 23. The answer denied infringement and set up other defenses. The result of the second trial was a decision, reasons for which are stated in an opinion, sustaining the charges of infringement as to the two claims mentioned, and awarding actual damages in the sum of $11,000, with $7,418.85 added for expenses, or a total of $18,418.85. For rea-

sons which may be omitted, this total was by stipulation reduced to $18,088.44, for which final decree was entered October 6, 1919. From that decree defendant appeals.

[1] The underlying question takes a two-fold form. To what extent, if at all, does the Arlington structure infringe the plaintiff's patent? And to what damages, if any, is the plaintiff entitled? The claims held to be infringed read as follows:

"20. In an apparatus of the class described, the combination of two train sheds side by side, individual hot air and return ducts for each shed, a blowing apparatus connected with the ducts of both sheds, and dampers adapted to restrict the action of such apparatus to either shed."

"23. In an apparatus of the class described, the combination of a train shed, a blower room located at an intermediate point at the top of the train shed, a pair of blowers in said blower room discharging in opposite directions, means for conducting air from such blowers through the train shed and returning it to the blowers, and means for heating such air."

It seems obvious that these claims would not be infringed by a thawing apparatus of the same general type as the one under review, if it were so constructed that each of the side by side sheds or stalls was wholly independent of the other and there was no opening in the partition between them; for the invention held valid and infringed is the device of dampers, consisting of sheet metal doors adapted to be positioned to deflect the air, by means of which the heated air from the fan of one stall can be diverted into the ducts of the adjoining stall as occasion may require. As the learned District Judge says in his opinion:

"With the dampers in place, claims 20 and 23 are infringed. Without these appliances, there is no infringement."

It appears to be conceded, and will be assumed, that if the Arlington plant had been built as originally designed and intended, and as contracted for, it would have infringed these two claims the same as does the Curtis Bay plant; for the specifications on which the contract was based state, among other things:

"Four separate duplicate units are provided. Each unit is primarily intended to serve one stall. The unit for stall No. 1, by an arrangement of dampers, can be made to serve stall No. 2. In like manner, the unit for stall No. 2 can be made to serve stall No. 1. A like combination will develop in the case of stalls Nos. 3 and 4."

But defendant asserts that the plant was not built in that way, with "an arrangement of dampers," or with any dampers at all, and it therefore becomes important to know what the facts are in that regard. As above recited, the contract was let in August, 1916, but the plant was not finished and turned over by the contractor until the latter part of December of the following year. In the course of construction openings were made where dampers were to be placed, with hinges on their frames on which the dampers were to be hung. The dampers themselves were fabricated for at least two stalls, though apparently not completed with corresponding hinges. They were once "stood in place" for a short time, "jammed and wedged in place," in stalls 1 and 2 only,

to permit an experimental test of the heating capacity of the furnaces, but were not otherwise used. They were never put in a normal or operative position, and certainly never employed to deflect heated air from one stall to another.

[2, 3] In July or August, 1917, after the decision in the Curtis Bay case, orders were issued to do away with the dampers altogether, and not long afterwards they were entirely removed. The openings were covered with plates of galvanized steel of the same material and thickness as the walls of the ducts, to which they were firmly bolted. It is not perceived that the work could well have been done in a more suitable or substantial manner. We cannot believe that defendant was bound, under the conditions then existing, to demolish this expensive building and erect another with solid partitions between the stalls; it was enough to close the openings securely, as it did, and to abandon definitely the plan and purpose of using dampers. True, the plates could be taken off and dampers mounted in a comparatively short time and at no great expense; but for all practical purposes the altered structure was as devoid of dampers as though originally so designed. Each stall became a separate and independent thawing apparatus, unrelated to the others except by proximity. As one witness says:

"You could take any one away without interfering with any of the others."

And as another witness says:

"So far as the operation is concerned they might have been built as four separate units, spaced apart."

In short, while the plant was still incomplete and unusable, the damper feature was wholly eliminated by an effective and permanent change of construction. The trial court finds that it "was never used in its infringing form by the defendant," and in point of fact it seems not to have been used in any form prior to January 1, 1918, when all the properties of defendant were taken over by the government.

Taking into account these facts, which are either undisputed or appear to be established by the clear weight of evidence, we are unable to see that the Arlington plant infringes or ever has infringed the plaintiff's patent. As we read the record, all that fairly can be said is that, if this plant had been built as designed and contracted for in August, 1916, it would have infringed the two claims which nearly a year later were held valid and infringed in the case of the Curtis Bay plant. But it was not so built. Shortly after the decision in that case was announced, and before the interlocutory decree was entered, and while the structure was so far from completion as to be incapable of use for thawing purposes, the original design was changed as respects the parts here in dispute, all dampers discarded, the openings left therefor closed up as effectually as was practicable, and the plant finished in a wholly noninfringing form.

As will be observed, the patent in suit has but limited validity. It does not cover a complete thawing apparatus, or even an essential element of such an apparatus; it is confined to the type in which dampers

are provided for deflecting the heated air from one stall to another. If that particular feature be left out, any one has the right to build a plant which otherwise copies the one at Curtis Bay. As the trial court decided, "without these appliances [dampers] there is no infringement," and we are convinced, after careful and repeated scrutiny of the evidence, that the Arlington plant did not have dampers at any stage of its construction, certainly not in any practical or substantial sense, and therefore has never infringed the claims in question. For of claim 23, which makes no mention of dampers but calls for a train shed and "a pair of blowers" discharging in opposite directions, it is enough to say, as the court below inferentially held, that the elimination of dampers in effect eliminated the pair of blowers, since without dampers the combination described in this claim would not be operative.

The conduct of defendant, in appropriating a general plan which Newhall appears to have originated, may not be commendable—it is not for us to judge—but if it had the right to do what it did, as we are constrained to hold, the plaintiff has no legal ground of complaint and must be denied an award of damages. And if it be argued that the original design shows intent to infringe, the sufficient answer is that the intent was not carried into effect, and that beyond doubt infringement cannot be predicated upon mere intention. Sheffield v. Foundry Co. (C. C.) 177 Fed. 713; Luten v. Town of Lee (D. C.) 206 Fed. 904.

[4] It is only needful to add that plaintiff had no occasion to file the supplemental bill for the purpose of preventing a threatened or potential infringement, for the interlocutory decree of September, 1917, a year and a half before, granted an injunction "against the defendant, its agents and employees, restraining further infringement of claims 20 and 23 of said patent"; while the final decree of November following, under which the Curtis Bay plant was to be released upon payment of the damages therein awarded, also provided, "but with that exception the injunction shall continue." The Arlington plant is manifestly covered by the injunction so granted and continued, and there is no suggestion that it has not been scrupulously obeyed by defendant.

It follows that the supplemental bill should have been dismissed, and the decree appealed from will accordingly be reversed.