JAMISON COLD STORAGE DOOR CO. v. VICTOR COOLER DOOR CO., Inc.

No. 1444.

District Court, D. Maryland.

Feb. 24, 1930.

Charles Markell, of Baltimore, Md., and Charles L. Sturtevant, Eugene G. Mason, and Herbert H. Porter, all of Washington, D. C., for plaintiff.

Omer T. Kaylor, of Hagerstown, Md., William F. Hall, of Washington, D. C., and Alexander Armstrong, of Baltimore, Md., for defendant.

SOPER, District Judge.

This suit was brought to secure an injunction and an accounting of profits and damages by reason of the infringement of two United States patents to Samuel Price Stevenson, No. 1,099,626, issued June 9, 1914, and No. 1,208,042 issued December 12, 1916. They will be called respectively Patent No. 1 and Patent No. 2. They were acquired on April 19, 1927, by the Jamison Cold Storage Door Company, the plaintiff in this case, whose factory is located at Hagerstown, Md. The bill of complaint charges that the Victor Cooler Door Company, the defendant, which is also located in Hagerstown, has infringed both patents. The answer denies infringement of the first patent, and alleges that both patents are invalid. Throughout the testimony there was frequent reference to refrigerator doors, and it would seem that both parties to the suit are chiefly occupied in the manufacture of doors for cold storage or freezing compartments.

The first patent is entitled "Fasteners for Doors." It relates to fastening devices for doors, which include a latch, together with operating devices for releasing the latch from either side of the door, by a movement in the direction of the swing of the door. Claim 1, which alone is relied upon, is as follows: "1. In a fastener for doors, the combination of a latch for holding the door closed, a spring for normally throwing the latch to locking position, and means for releasing said latch, including a swinging lever on one side of said door, a push rod extending through the door, and connected to said lever, and devices for connecting the lever to the latch, whereby the movement of the lever in the direction for opening the door will release the latch."

It will be observed that the following elements are found in combination to constitute the door fastener:

(1) A latch.

(2) A spring for throwing the latch to locking position.

(3) Means for releasing the latch, including

(a) a swinging lever on one side of the door,

(b) devices for connecting the lever to the latch

(c) a push rod extending through the door and connected to the lever.

It also appears that this combination of elements works in such a manner that the movement of the lever in the direction for opening the door will release the latch.

The specification and diagramatic drawings disclose a supporting plate which is fastened to the door and which in turn supports the latch mechanism. Upon the supporting plate are two outwardly projecting lugs in which a shaft is mounted so as to rotate freely. The shaft is provided at one end with a rigid arm or latch which carries a latch roller, adapted to engage a keeper. The front surface of the keeper is inclined away from the plane of movement of the shaft. As the door approaches the door jamb in closing, the roller mounts the inclined plane of the keeper to the top thereof, and then descends the keeper upon its inner surface which is inclined in the opposite direction. There is a spiral spring wound about the shaft and secured to one end thereof, which normally tends to rotate the shaft toward the keeper, whereby the latch roller is swung toward the keeper and carried up its outer inclined surface over its nose and down its inner inclined surface. At the opposite end of the rotating shaft there is rigidly attached a lever in a vertical position parallel with the door. For releasing and closing purposes, the lever is moved in the same direction as the door.

The mechanism also includes a device for operating the fastener from the rear or inner side of the door. The latch lever is provided at its lower end with a vertical slot, into which

is fastened the projecting end of a rod which extends longitudinally through the door. When the opposite end of the rod is pushed or pulled from the inside of the door, the rod causes the lever to operate in the same manner as if grasped by hand and operated by a person on the outside of the door.

### Validity of Patent No. 1.

It is plain from the foregoing description that the mechanism of the first Stevenson patent may be divided roughly into two parts: (1) That on the exterior of the door and on the contiguous part of the door frame; and (2) that for releasing the latch which is accessible for operation on the inside of the door and is connected with the latch on the outside of the door. Confining the statement to the first part of the mechanism, it may be conceded that in every substantial element, it was anticipated by the prior United States patent to Jones, No. 1,046,072. Except for the modification of the latch lever in the patent in suit, inserted in order to secure the desired connection with the mechanism interior of the door, the disclosures of this patent and of the Jones patent are the same. Stevenson started with the Jones structure and made an addition thereto; a fact which becomes all the more clear when it is noted that the patent to Jones was issued to him as assignor to Stevenson. The distinction between the Stevenson and Jones patents resides in that part of the mechanism designed to open the door from the inside. Jones omits an important element of obvious convenience and usefulness, found in the Stevenson patent and described in the claim as a push rod extending through the door and connected on the outside with the latch lever, whereby the movement of the lever in the direction for opening the door will release the latch. Indeed it is possible in the Stevenson structure not only to open the door from the inside, by pressure exerted on the end of the push rod in the direction in which the door opens, but also to close the door from the inside with the same rigidity and tightness as if it were closed from the outside. This effect is secured by reason of the arrangement of the latch roller and the inclined sides of the keeper co-operating with the spring which tends to throw and to hold the latch in locking position.

Jones does not make this disclosure. His illustrative figures show one form of latch mechanism which can be operated only from the exterior of the door and another form which can be operated from both sides of the door. The form first mentioned resembles the Stevenson patent in that the operating latch lever moves in the same direction as the door in opening and closing, but differs in that it has no mechanism by which the door may be opened or closed from the inside. The Jones patent expressly states that in this form of the device, the parts shown are capable of manual operation from only one side of the door. In the other form of device shown by Jones, the latch may be released and the door may be opened or closed from either the inner or the outer side, but the way of releasing the latch is entirely different from that disclosed by Stevenson. Jones provides levers on each side of the door which swing parallel to the general plane of the door so that when they are operated, they do not move, as in the Stevenson device, in the same direction as the door. Consequently there is a substantial difference between the two devices in simplicity and efficiency of operation from the inside of the enclosure. The Stevenson door may be opened or closed from the inside with a single motion exerting pressure in the same direction as the moving door. The Jones door requires two motions in different directions, one to move the lever in a plane parallel to the door and one to move the door in a plane perpendicular thereto. The importance of Stevenson's improvement is more clearly shown in the combination of elements which will be discussed under the heading of the second patent.

But the defendant takes the position, that, although the Jones patent does not disclose a mechanism for opening the door accessible from the inside and operable by a movement in the direction in which the door moves, this idea was disclosed in a number of prior United States patents, to wit: Millard, No. 517,353; Dodge, No. 723,846; Feucht, No. 916,545; Kaye, No. 258,431; Stanynought, No. 403,393; Butler, No. 1,033,051; Sharpe, No. 128,075. These patents do show devices by which the locking mechanism may be operated from the inside of the door, and in a number of them, the levers move in the same direction as the door when it is opened. None of these patents, however, shows the Stevenson combination. While some of them show an interior mechanism similar to that of Stevenson, in the respect mentioned, they do not show such an element in combination with the efficient locking mechanism on the exterior of the door which Stevenson derived from Jones.

For instance, the Millard patent (which was considered by the examiner), discloses a push rod operable from the inside of the door for releasing the fastener on the outside.

But the mechanism outside the door contains no spring for moving the latch to a closed position and the fastener is obviously intended to be operated from without the door for closing it and drawing it to a tight closed position. A particular purpose of the invention was to provide means for operating the door from the inside of such an enclosure as a refrigerator, so as to make it impossible to shut persons inside without means of escape.

The Dodge patent shows a mechanism which includes a push rod extending from the outside to the inside of the door for swinging a lever to release the latch; but there is a pawl adapted to engage teeth on the keeper of the fastener. This ratchet must be operated by a series of operations which force the door to a closed position. It can only be operated from the outside of the door in order to close it tightly. There is no latch capable of being moved to a locking position by an inward movement of the latch and no spring on the latch for moving it toward a locking position.

The Kaye patent is distinguishable from the patent in suit in a number of particulars, and has a special defect in that the latch and operating mechanism therefor are mounted in a pocket or chamber between the inner and outer faces of the door. The weight of the testimony shows that such a device is impracticable, when applied to a refrigerator door, because moisture will accumulate and freeze in the pocket and render the fastener inoperative. It is true that the first Stevenson patent is not limited to refrigerator doors, but the evidence shows that such doors form a most important application of the invention.

In brief it may be said, without setting out the particulars of all the cited patents, that they do not include a mechanism exterior of the door similar to that of Jones. Hence the situation may be summarized by the statement that Stevenson has combined in his invention an exterior mechanism substantially similar to that of Jones and an interior mechanism which includes the idea found in a number of the other patents of an interior mechanism operable in the same direction as the door. The defendant contends that there was no invention in combining these old elements in a new patent. But this conclusion does not seem to follow. The patentee suggested a useful improvement in an art in which many inventions had been made and many patents had been granted. The suggestion seems simple enough now that it has been made, but no one else thought of it and under the circumstances, the presumption of patentability arising from the grant of the patent should prevail.

### Infringement of Patent No. 1.

This subject may also be considered with respect (1) to the mechanism exterior of the door and (2) the mechanism on the interior thereof, together with the means whereby it is connected with the outside. The defendant claims in the first place that it does not infringe the patent because there is a substantial distinction between a portion of its exterior mechanism and the corresponding mechanism of the patent in suit. Claim 1 of the patent mentions as a feature of the mechanism, "devices for connecting the lever to the latch." The defendant asserts that it has omitted this feature from its fastener, and, therefore, must be acquitted of infringement under the well-established rule that infringement ordinarily does not occur where the defendant's device omits one or more of the elements specifically required by the claim of the patent sued on. National Mach. Corp. v. Benthall Mach. Co. (C. C. A.) 241 F. 72; Baltimore & O. R. Co. v. Walter S. Newhall Co. (C. C. A.) 274 F. 889. This rule of course is subject to the qualification that one does not escape infringement by combining into one element what the claim of a patent specifies as two, provided the one element performs the function of both in the same way. Gibbs v. Triumph Trap Co., Inc. (C. C. A.) 26 F.(2d) 312.

The differences referred to between the defendant's structure and that of the patent in suit may be described as follows: The plaintiff's exterior mechanism, as we have seen, includes outside the door a plate upon which a rock shaft is mounted. The shaft carries at one end a latch, which is equipped at its free end with the latch roller that engages the keeper. At the other end of the rock shaft there is rigidly attached by a pin the latch lever or handle by which the rock shaft is rotated. There is also a spring coiled about the shaft which tends to hold the latch in engaging position. Thus the defendant says there are certain devices in the plaintiff's structure whereby the latch lever is connected with the latch, and that these consist of the rock shaft and the pin by which the latch lever is rigidly affixed to the shaft.

The defendant's mechanism also contains a plate secured to the door; but instead of a rock shaft, the defendant has mounted upon the plate a flat bar which is pivoted at

one end directly to the plate and which at its opposite free end is equipped with a roller that engages the keeper on the door frame. This bar is in fact the defendant's latch. The defendant's latch lever operates in the direction in which the door moves, but is of the bell crank type. One arm of the lever constitutes the handle and the other arm projects below the central portion of the latch bar. The lever is not rigidly connected with the latch bar but merely forms contact therewith. At the point of contact, the latch bar is equipped with a slot, which may be either a completed curve or a curve broken on the underside. The contact between the latch lever and the latch bar is made by means of a lug or heel attached to the end of the latch lever which projects either into the closed curve or beneath the broken curve in the latch bar as the case may be. The defendant insists that since its lever is not physically connected with the latch, but only comes into contact therewith, it does not use "devices for connecting the lever to the latch."

But it is obvious that the defendant's structure in the respect under consideration is the substantial equivalent of that described in the claim. In both cases the movement of the lever towards the face of the door in the closing operation causes the roller at the end of the latch to mount the inclined face of the keeper to the summit thereof and thence to descend the keeper on the other side. In both cases there are in a literal sense devices for connecting the lever to the latch. These devices in the patent in suit consist of the rock bar and the pin by which the latch lever is attached thereto; and in the defendant's mechanism, they consist of the projecting heel or lug at the base of the latch levers and of the slot, whether it be a closed or an open curve, in which the heel is inserted. It is of no moment or importance that the projecting heel is not rigidly connected with the curved slot. Hence there is no room for the application of the general rule, that the elimination of one or more of the elements specifically required by a claim, obviates infringement thereof.

An application to a latch mechanism of the rule that substantial identity constitutes infringement, has been recently made by the Supreme Court in Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 50 S. Ct. 9, 12, 74 L. Ed. ——, and is so pertinent that it may be quoted here with profit:

"There is a substantial identity, constituting infringement, where a device is a copy of the thing described by the patentee, 'either without variation, or with such variations as are consistent with its being in substance the same thing.' Burr v. Duryee, 1 Wall. 531, 573, 17 L. Ed. 650. Except where form is of the essence of the invention, it has little weight in the decision of such an issue; and, generally speaking, one device is an infringement of another 'if it performs substantially the same function in substantially the same way to obtain the same result. * * * Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.' Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935. And see Elizabeth v. Pavement Co., 97 U. S. 126, 137, 24 L. Ed. 1000. That mere colorable departures from the patented device do not avoid infringement, see McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930. A close copy which seeks to use the substance of the invention, and, although showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement. Ives v. Hamilton, 92 U. S. 426, 430, 23 L. Ed. 494. And even where, in view of the state of the art, the invention must be restricted to the form shown and described by the patentee and cannot be extended to embrace a new form which is a substantial departure therefrom, it is nevertheless infringed by a device in which there is no substantial departure from the description in the patent, but a mere colorable departure therefrom. Compare Duff v. Sterling Pump Co., 107 U. S. 636, 639, 2 S. Ct. 487, 27 L. Ed. 517."

In the next place the defendant contends that it does not infringe claim 1 of the first patent because it omits an element which relates to the mechanism on the inside of the door, or the means by which it is connected with the latch on the outside of the door. The claim states that there is a push rod extending through the door "and connected to" the latch lever. The purpose, as we have seen, is to permit the opening of the door from the inside by pressure upon the push rod in the direction for opening the door. We are concerned with the phrase, "connected to said lever," the defendant claiming that although in the patented structure there is a connection between the push

bar and the lever, in the defendant's structure no such connection exists.

The patented invention accomplishes the purpose of opening the door from the inside by providing a push rod which fits snugly in a hole in the door and extends through the door. There is a connection between the outer end of the push rod and the lever which consists of slots in the lower end of the lever which are at right angles to each other, one slot extending through the lever from the front to rear, termed a vertical slot in the patent, and two other slots at right angles thereto which are arcuate. The specification contains the following statement:

"To provide for operating the fastener from the rear side of the door, this arm or lever (referring to the latch lever) is provided with a vertical slot into which projects the end of rod or bar. * * * Said lever or arm is formed with curved slots which are located in the side walls of the central slot. The rod carries a cross pin on which are mounted rollers which engage the curved slots formed in the side walls of the arm or lever. These slots are curved so that the line of pressure due to the longitudinal movement of the rod is substantially at right angles to a tangent to the curve at the point of contact of the rollers carried by the rod with the curve. In other words the contacting surface of the slot is substantially at right angles to the plane of travel of the rollers. * * * By this construction of the slot, I am able to manipulate the arm or lever connected to the latch by a rod which moves in a straight line without any resulting lateral or binding strains on the rod which would occur if said slot were straight and in a direction longitudinal of the arm."

This peculiar construction of the connection between the push bar and the latch lever had some importance in the patentee's mind, as shown by the contents of the specification and the fact that three of the diagramatic figures or drawings were devoted to its illustration. By reason of these facts and other considerations, defendant claims that the sole patentability of claim 1 of the first patent resides in the manner in which the push bar is thus attached to the lever. Reference is also made by the defendant to a citation by the examiner in the Patent Office of the United States patent to Feucht, No. 916,545, by reason of which original claim 1 of the patent was canceled and present claim 1 was substituted. The argument is that there is no distinction between the original and the present claim 1 except that in the original claim 1, there was only a general description of "means extending to the opposite side of the door for swinging said lever," whereas in the present claim 1, these means are more particularly described as "a push rod extending through the door and connected to said lever." Defendant says that claim 1, as it now appears, was saved by the reference to the means for connecting the push rod with the lever as described in detail in the specification. The examiner, however, made no reference to this distinction. He cited the Feucht patent because of a spring comprised in its mechanism whereby the latch was held in latching position; a feature seemingly covered by a clause in original claim 1, in the following words, to wit: "Means for yieldingly holding the latch in locking position." In claim 1 as granted, the corresponding element is expressed as follows: "A spring for normally throwing the latch to locking position." The spring in Feucht patent does not have this function. It does not operate to draw the door tightly to closed position. Hence the Patent Office may well have considered that the Feucht patent was no bar to the grant of claim 1, as it now appears. There are other differences between the exterior mechanism in the Feucht patent and that in the patent in suit. In short, the Feucht patent, like the other patents cited by defendant, may be distinguished because it does not show the combination of the patent in suit whereby the locking device originally disclosed in the Jones patent was adapted to be used in connection with a mechanism for opening the door from the inside, operable by pressure in the direction in which the door opens. There is, therefore, no necessity for the limitation of claim 1, to the precise construction shown in the patent in suit with reference to the means for connecting the push rod to the latch lever. On the contrary, any substantial equivalent or colorable imitation thereof constitutes an infringement.

An examination of the defendant's structure shows that it does not substantially depart from the device described and claimed in the patent. The swinging lever on the outside of the door is connected with the latch, as we have seen, by a rearwardly projecting lug or heel at the bottom of the lever, which extends into an opening in the latch. A push rod extends through the door and has an end-on or abutting connection with the central part of the lever. When the push rod is moved in the direction for opening the door from the inside of the door, power is communicated to the lever through

this connection, the projecting heel of the lever is lifted up, carrying with it the latch so that it is released from the keeper. It is of no moment that in this operation the end of the push rod is not rigidly connected to the latch lever. Indeed, in some of the machines now made by the plaintiff under its patent, the connection between the push rod and the operating lever described in the patented drawing is purposely omitted. Manifestly, the defendant's releasing mechanism performs the same function as that of the patent in suit in substantially the same way. Infringement of claim 1 is made out.

### Patent No. 2.

■ This patent covers a closure unit for a room or compartment in which the temperature is maintained at a degree different from the surrounding temperature. Two doors, an inner door and an outer door, are hung independently of each other, in the same door frame. The outer door is equipped with an automatic fastener. The inner or auxiliary door is so mounted that when it is swung to an open position and released, it automatically returns to a closed position. The two doors may be operated together from the inside by means of a movable member connected to the latch mechanism on the outer door, which member can be actuated by the opening outwardly of the inner doors.

The second claim of the patent which is typical, is as follows: "2. A closure for a compartment having an opening, comprising an outer door hinged to close the outer side of the opening, an automatic fastener for such door, an inner auxiliary door hinged in the opening independently of the outer cover, means for yieldingly closing said auxiliary door across the opening independently of the position of the outer door, and a movable element connected to actuate the fastener on the outer door and adapted to be operated by the auxiliary door when the latter is opened outward."

It thus appears that the claim consists of four major elements:

(1) An outer door hinged to close the outer side of the opening;

(2) An automatic fastener for the outer door;

(3) An inner auxiliary door hinged in the opening independently of the outer door and provided with means for closing the opening independently of the outer door;

(4) A movable member adapted to actuate the fastener on the outer door and operate it by the opening of the auxiliary door.

No pretension of novelty is made in respect to the means disclosed for closing the inner door automatically. They need not be described. Nor is it claimed that invention resides in the automatic fastener on the outer door. This member may be like that shown in the first Stevenson patent, but is not limited thereto. The specification of the second patent expressly states that "the fastener may be of any construction required and desired, so long as it automatically fastens and is released by the push bolt when moved outward by impact against its inner end." Patentability is claimed for the combination of elements which makes it possible for a person inside the inclosure to open both doors and emerge merely by exerting pressure on the inner side of the inner door. In order to accomplish this result, the inside of the outer door is equipped with a swinging member which is so disposed that when the inner door moves outwardly, it strikes against the swinging member and presses it toward the door. The swinging member in turn bears upon the end of a push rod which passes through the door and forces it outwardly so as to swing the lever on the outer face of the door in such a manner as to lift the latch and release the fastener.

The defendant manufactures a closure unit consisting of inner and outer doors independently mounted in the same door frame and concedes that this unit infringes the second Stevenson patent. The defense is lack of patentable invention. Photographs and other descriptions of closure units in which inner and outer doors are mounted in the same door frame were put in evidence. Thus it was shown that such doors have been used upon a cold storage room in the building of the Chamberlain Company at Boston, Mass., for more than twenty years. These doors, however, differ materially, both separately and in combination, from those disclosed by the patent in suit. The outer door was not equipped with an automatic fastener and when closed, could not be opened from within either by hand or by contact therewith of the inner doors. Another construction was found in a plant of Swift & Company at Boston which differed from the Chamberlain doors in that the outer doors, when closed, could be opened from within by a lever; but this lever operated in a plane parallel to the face of the door and consequently was not operable through contact with the inner doors when the latter were opened outwards. In addition, defendant called attention to the fact that for many

years a set of inner and outer doors, mounted independently in the same door frame, have been used to close the entrance to the United States District Court in Baltimore. These doors also are without means by which the outer can be operated by the opening of the inner doors.

Well known structures of this sort, so far as the file wrapper shows, were not brought specifically to the attention of the Patent Office. The examiner did consider the device described in the Carroll Patent No. 815,334, wherein there are outer and inner doors so associated that when the inner door is moved in the direction of the outer door, the latch on the latter is released and the outer door is opened. The inner door, however, is not mounted independently of the outer door and consequently when the outer door is open, the inner door is likewise.

Considering all of these items in the prior art, the defendant makes the following argument. It was old at the time of the second Stevenson patent to install a door equipped with an automatic fastener which could be operated from within. The so-called panic bar mounted on the inside of doors in public buildings has been used for a long time to insure the safety of persons within, since pressure upon it will release the outside latching mechanism. An equivalent disclosure was made in the first Stevenson patent and other patents cited. It was also old in the art, as shown in the Swift and Chamberlain plants and in the Baltimore court room, to mount in the same doorway an outer door and an inner door independently of each other, the inner door being so hinged that it would close automatically irrespective of the position of the outer door. It was also old to release the latch mechanism on an outer door by the movement of an inner door not independently mounted, as shown by the Carroll patent. Consequently there is a total absence of patentable invention in combining these old structures in a new arrangement. It would not be invention, for instance, to rearrange the doors associated together in the Chamberlain Building by substituting for the old fashioned mechanism of the outer door any one of the well known latch mechanisms of the prior art which embody an inner latch releasing device; or, to put it in another way, it would not be invention to install in a doorway, already provided with an outer door, equipped with an automatic latch mechanism operated from within, automatically closing inner doors such as have been used for many years in many places. This sort of argument is usually encountered when infringement of a patent, which consists of a new combination of elements old in themselves, has been established. The law is clear enough that the selection and putting together of the most desirable parts of different machines in the same art to make a new machine is not invention if each part operates in the same way as it operated before and effects the same results, for the reason that such combinations are merely evolutions of the mechanic's aptitude rather than creations of the inventor's faculty. But it is equally well settled that a new combination of elements, old in themselves, which produces new and useful results, entitles the invention to the protection of a patent. Huebner-Toledo Brew. Co. v. Mathews Grav. Carrier Co. (C. C. A.) 253 F. 447; Webster Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; United States Industrial Chemical Co. v. Theroz Co. (C. C. A.) 25 F.(2d) 387, 391.

It is not denied that the second Stevenson invention performs novel and useful functions and involves a combination not theretofore used in the art. Inner flapper doors, such as are used in the court room and in the Chamberlain place of business, have been employed to avoid the opening and closing of the outer doors. They were intended to preserve the temperature and to close the opening automatically without the operation of the outer doors. There was no purpose or necessity for the opening, when closed, of the outer doors by the operation of the inner ones. The patentee, on the other hand, devised his combination for different purposes. It was his intention that the flapper doors should be used so as to bring about the opening of the outer door and yet to remain closed themselves. With his construction, both sets of doors may be closed and a tighter closure of the opening secured without imprisoning persons within the compartment; and a person operating a truck or burdened with parcels may pass out through both sets of doors without the use of his hands. The combination seems now simple and obvious enough, but it appears from the evidence that it was not in use until Stevenson himself devised it, more than two years after he applied for the first patent.

The presumption of patentability is supported in this case by the practical utility of the invention. Closure units of the type of the second Stevenson patent were first man-

ufactured by the Stevenson Cold Storage Door Company in 1917. The business of this company steadily increased during the next decade. In 1927, the plaintiff company, a competitor, recognizing the merit of the invention, purchased the Stevenson Company and has since manufactured the patented article. The defendant company paid its tribute to the advantages of the patented device by beginning the manufacture thereof actively in the year 1926; since which time, the sales by the Stevenson Company and the plaintiff as its successor, have substantially fallen off. Three other competitors have also entered the field, one of whom desisted when notified of infringement.

Under all of these circumstances, and taking into consideration the prima facie presumption of patentability and the commercial success of the patented article, it is the finding of the court that the patentability of the second Stevenson invention has been established.

A decree in accordance with this opinion will be signed.